# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEANNA K. HARVEY,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br><br>Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:16-cv-00129-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 14, 15 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 18. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 14) and grants Defendant's motion (ECF No. 15).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income and disability insurance benefits on May 8, 2012, alleging an onset date of August 1, 2009. Tr. 214-22. The applications were denied initially, Tr. 92-119, 150-52, and upon reconsideration. Tr. 156-62. Plaintiff appeared for a hearing before an administrative law judge (ALJ) on August 21, 2014. Tr. 47-91. On September 26, 2013, the ALJ denied Plaintiff's claim. Tr. 22-37.

At the outset, the ALJ found that Plaintiff met the insured status requirements of the Act with respect to her disability insurance benefit claim through December 31, 2013. Tr. 27. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 1, 2009, the onset date. Tr. 27. At step two, the ALJ found Plaintiff has the following severe impairments: mild

bilateral carpal tunnel syndrome, bilateral osteoarthritis of the shoulders, lumbar facet arthropathy with chronic low back pain, and mild obesity. Tr. 27. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. Tr. 30. The ALJ then found that Plaintiff has the RFC

> to lift and carry 10 pounds occasionally and small articles frequently, stand/walk 6 hours in an 8-hour day, and sit without limit. Standing and walking 6 hours cannot all be consecutive. The claimant needs at least every two hours, better if every hour, a stretch period of a minute or two. The claimant can never reach overhead bilaterally and can occasionally reach bilaterally in all other directions. The claimant must avoid concentrated exposure to extreme temperatures and vibration and all exposure to hazards.

Tr. 30-31.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 35. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that Plaintiff can perform, such as call-out operator and telemarketer. Tr. 36. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from August 1, 2009, through the date of the decision. Tr. 37.

On February 25, 2016, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI and disability insurance benefits under Title II of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly determined Plaintiff's severe impairments at step two;

2. Whether the ALJ properly weighed Plaintiff's symptom claims;

3. Whether the ALJ properly determined Plaintiff's residual functional capacity; and

4. Whether the ALJ posed a complete hypothetical to the vocational expert. ECF No. 14 at 8.

**DISCUSSION**

**A. Step Two**

First, Plaintiff faults the ALJ for failing to find mental impairments severe at step two and finding that the diagnosis of fibromyalgia was not medically determined. ECF No. 14 at 11-12.

*1. Mental Impairments*

Plaintiff contends the ALJ should have found at step two that she suffers severe mental impairments. ECF No. 14 at 11-12. The ALJ found that the record

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

contains conflicting evidence and failed to establish that Plaintiff suffers severe

mental impairments.  Tr. 28-30.

A physical or mental impairment is one that "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§

423(d)(3), 1382c(a)(3)(D).  An impairment must be established by medical

evidence consisting of signs, symptoms, and laboratory findings, and "under no

circumstances may the existence of an impairment be established on the basis of

symptoms alone."  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (citing

S.S.R. 96-4p, 1996 WL 374187 (July 2, 1996)) (defining "symptoms" as an

"individual's own perception or description of the impact of" the impairment).

The fact that a medically determinable condition exists does not

automatically mean the symptoms are "severe" or "disabling" as defined by the

Social Security regulations.  *See, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1159-

60 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v.

Heckler,* 754 F.2d 1545, 1549-50 (9th Cir. 1985).  An impairment, to be considered

severe, must significantly limit an individual's ability to perform basic work

activities.  20 C.F.R. § 416.920(c); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

1996). An impairment is not severe if it does not significantly limit an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).[1] An impairment does not limit an ability to do basic work activities where it "would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.1521(b); S.S.R. 85-28.

Plaintiff bears the burden of establishing the existence of a severe impairment or combination of impairments, which prevent her from performing substantial gainful activity and that the impairment or combination of impairments lasted for at least twelve consecutive months. 20 C.F.R. § 404.1512(a); *Edlund*, 253 F.3d at 1159-60. However, step two is "a *de minimus* screening device used to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "Thus, applying our

---

[1] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

normal standard of review to the requirements of step two, [the court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (Where medical reports are inconclusive, " 'questions of credibility and resolution of conflicts in the testimony are solely functions of the Secretary.' ").

Here, the ALJ found that the reviewing psychologist, Dr. Martin, testified that Plaintiff's mental health impairments are generally mild and at most, mild to moderate, indicating that they are non-severe. Tr. 28-29 (citing Tr. 63-65, 67-68) (Dr. Martin opined that Plaintiff's mental impairments are generally non-severe). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

The ALJ found Dr. Martin's opinion was consistent with the record as a whole, including Plaintiff's reported activities. Tr. 28-29. Relevant factors when evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the

consistency of the medical opinion with the record as a whole.[2] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Further, opinions that are consistent with a claimant's functioning are entitled to greater weight. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning).

The ALJ found, for example, consistent with Dr. Martin's opinion, that in September 2011 Plaintiff told examining psychologist Debra Brown, Ph.D., she performed paid caregiving, and was sometimes also paid to cut hair. Tr. 28-29 (citing Tr. 773). The ALJ also found that at the same time, Plaintiff told Dr. Brown that she visited friends; enjoyed driving around for entertainment; drove her son to and from school; and, once a week, prepared dinner for several different

_____

[2] The record as a whole, and particularly after onset, supports Dr. Martin's opinion. Many of the mental health treatment records, for example, relate to a period several years before alleged onset in August 2009. *See, e.g.,* Tr. 780-830 (treatment records from April 2002 through November 2003); Tr. 377-462 (treatment records from January 2005 through July 2007). Medical opinions that predate the alleged onset of disability are of limited relevance. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

people.  Tr. 28-29 (citing Tr. 773).  This wide range of activities is consistent with Dr. Martin's opinion that Plaintiff has no more than mild mental limitations.  In addition, the ALJ further found Plaintiff told Dr. Brown that she was not working because she was taking care of her son, rather than as a result of her impairments, another indication of non-severe impairments.  Tr. 29 (citing Tr. 774).  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (the ability to care for children may undermine complaints of severe limitations).

The ALJ found the evidence of Plaintiff's activities in 2012 similarly supported Dr. Martin's opinion.  Tr. 29.  The ALJ found, for example, that in May 2012 Plaintiff told examining psychologist Dr. Arnold she drove her daughter to work in order to have the car available if she [Plaintiff] needed it; Plaintiff also reported that she played bingo, checked in on a friend's mother, took the bus, and performed other routine tasks.  Tr. 29 (citing Tr. 720).

The ALJ further found Dr. Martin testified that, despite a reported increase in symptoms between April and August 2014, Plaintiff continued to engage in a wide range of activities, again indicating no more than mild limitations.  Tr. 29 (citing Tr. 1161) (in June 2014 Plaintiff told treatment providers at Frontier Behavioral Health (FBH) that, although she was not sleeping well, medications "helped her get out more," depressive symptoms had decreased, and she had attended a basketball event as well as her high school reunion); (citing Tr. 1138-

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

39) (in August 2014 Plaintiff told treatment providers at FBH she was suffering anxiety and OCD symptoms, but at the same time, reported she cleaned her friend's house, gave rides to friends, and attended support group meetings). The ALJ is correct that these reported activities support Dr. Martin's opinion that Plaintiff suffers no more than mild mental impairments.

In addition, the ALJ found Dr. Martin's opinion that Plaintiff's mental impairments are non-severe is consistent with Plaintiff's mental status examinations. Tr. 29. For example, the ALJ found that in September 2011, examining psychologist Dr. Brown reported Plaintiff scored 30 out of 30 points on the MSE; successfully performed serial seven calculations; recalled 3 of 3 nouns after a 5-minute delay; and successfully performed a 3-step command. Tr. 29 (citing Tr. 776). As another example, the ALJ found that in May 2012, examining psychologist John Arnold, Ph.D., reported that Plaintiff again scored 30 of 30 points, indicating no more than mild limitations. Tr. 29 (citing Tr. 724). Dr. Arnold reported Plaintiff performed serial sevens without error and lost her place only once; performed serial threes without error; spelled "world" forward and backward correctly; and although noted to be anxious, Plaintiff was nonetheless alert, with normal speech and full eye contact, and displayed no remarkable motor activity. Tr. 29 (citing Tr. 724). Because an ALJ may properly rely on a reviewing physician's opinion supported by and consistent with other evidence,

*Andrews*, 53 F. 3d at 1041, the ALJ properly relied on Dr. Martin's opinion.

Last, the ALJ relied on the consistency of Dr. Martin's opinion with mental health treatment records for the relevant period. Tr. 29. For example, the ALJ found treatment provider Art Flores, PAC, reported in April 2012 that Plaintiff had been off of medication for OCD and depression for four months. Tr. 710. However, within a month and a half of restarting medication, Plaintiff told Mr. Flores her symptoms had improved. Tr. 29 (citing Tr. 714). Because an impairment that can be effectively controlled with medication is not disabling, *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006), this evidence supports Dr. Martin's opinion. The ALJ further found, as another example, that in September 2012, Plaintiff told Mr. Flores she was doing well with treatment, denied depression, and stated that she no longer obsessed about pain. Tr. 29 (citing Tr. 762). In addition, the ALJ found, as a further example, that during the 4-month period of increased symptoms reported by Plaintiff, from April to August 2014, on August 11, 2014, treatment providers at FBH observed Plaintiff's affect was constricted; however, they also noted Plaintiff presented as alert, attentive, and with a cooperative demeanor; moreover, Plaintiff maintained good eye contact. Tr. 29 (citing Tr. 1142-43). Because Dr. Martin's opinion was supported by substantial evidence, the ALJ properly credited Dr. Martin's opinion that Plaintiff does not suffer severe mental impairments.

## 2. *Fibromyalgia*

Next, Plaintiff faults the ALJ for finding that "chronic pain condition including fibromyalgia" was not a severe impairment. ECF No. 14 at 9-11. The ALJ found fibromyalgia was not medically determined. Tr. 27-28.

A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). An impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." *Ukolov*, 420 F.3d at 1005. In addition, an ALJ need not presume that a diagnosis equates to work-related limitations. *See Key*, 754 F.2d at 1549 ("the mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability.").

Here, the ALJ found the medical evidence did not show the requisite criteria for establishing that fibromyalgia was a medically determinable impairment. Tr. 27-28. The ALJ further found that a diagnosis of fibromyalgia is not enough to determine that fibromyalgia is medically determinable. Tr. 28. The ALJ opined, relying on S.S.R. 12-2p (2012 WL 3104869 at *2-*3), that the evidence must show, in part, that the claimant has a history of widespread, bilateral body pain and

axial skeletal pain that has persisted for at least three months.[3]  Tr. 28.

The ALJ found that medical records showed, at most, cursory mention of fibromyalgia with limited treatment.  Tr. 28 (citing Tr. 516) (In August 2008, treatment provider Gloria Goodwin, M.A, listed "fibromyalgia/myalgia/left hand pain/synovitis"; she noted Plaintiff was "still having problems with hand swelling, left, painful . . . Neurontin made tired, wiped out, miserable"; Lyrica was restarted); (citing Tr. 515) (In September 2008, Ms. Goodwin noted "fibromyalgia/muscle cramps/myalgia/fatigue" and "not taking Lyrica – hands quit

_____

[3] In addition, the ALJ further noted that there must be evidence that: either a physician conducted a physical examination of the claimant, which included testing tender point sites, with at least 11 positive tender point sites, or there must be repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions.  Finally, the ALJ noted that there must also be evidence that a physician ruled out other physical or mental disorders that could cause the symptoms or signs.  Tr. 28 (citing S.S.R. 12-2p) (2012 WL 3104869 at *2-3).  The ALJ found that these are not present, and Plaintiff does not point to evidence the ALJ should have credited.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

swelling and hurting.").[4]  The ALJ noted that, other than the few records cited, there was otherwise no mention of positive tender points or that other conditions were ruled out by an acceptable medical source, as required.  Tr. 28.  Thus, the ALJ found, in the absence of such evidence, fibromyalgia was not a medically determinable impairment.  Tr. 28.

Next, the ALJ noted that the finding of no medically determinable impairment was consistent with the testimony of medical expert Dr. Jahnke.  Tr. 28 (referring to Tr. 57-58).  The opinion of a nonexamining physician serves as substantial evidence if it is supported by other evidence in the record and is consistent with it.  *Andrews*, 53 F.3d at 1041.  Dr. Jahnke opined the record showed that Dr. Purdy had diagnosed fibromyalgia in 2008 but, other than Exhibit

---

[4] *See also* Tr. 28 (citing Tr. 519) (In April 2008, Ms. Goodwin noted "fatigue/fibromyalgia," Lyrica causes "her to be very tired during the day," so Plaintiff was now taking as needed and "feels it has helped pain"); (citing Tr. 520) (In April 2008, treatment provider Angela Purdy, M.A., questioned the diagnosis: "Does she have fibromyalgia?" and noted that Plaintiff had a lot of muscle cramps and was getting ready to start a new job); (citing Tr. 749) (In July 2012, treatment provider Art Flores, PAC noted a diagnosis of fibromyalgia and prescribed Amitriptyline).

4F, *see* Tr. 466- 527, it was never mentioned again. Tr. 28 (citing Dr. Jahnke at Tr. 57); (citing *e.g.,* Tr. 515-16) (Ms. Goodwin's treatment notes in August and December 2008 indicated "fibromyalgia/muscle cramps/myalgia/fatigue"); (citing Tr. 519-20) (In April 2008, treatment providers Ms. Goodwin and Ms. Purdy noted fatigue/fibromyalgia; Plaintiff feels Lyrica has helped her pain). Dr. Jahnke did not reference a later record, in 2012, but the ALJ did. Tr. 28 (citing Tr. 749) (in July 2012 treatment provider Mr. Flores noted a diagnosis of fibromyalgia and prescribed Amitriptyline; no pressure points are mentioned). The ALJ found that Plaintiff has failed to demonstrate (1) a history of widespread, bilateral body pain and axial skeletal pain that has persisted for at least three months, and (2) evidence that either (3) a physician conducted a physical examination which included testing tender point sites, with at least 11 positive tender point sites, or (4) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions and (5) evidence that a physician ruled out other physical or mental disorders that could cause the symptoms or signs. Tr. 28 (citing S.S.R. 12-2p). Furthermore, as Dr. Jahnke noted, there was no record of "serial visits over time" with repeated complaints and repeated attempts to ameliorate symptoms, Tr. 57-58, as one would expect with a severe impairment.

Furthermore, even if the ALJ should have determined one of the conditions identified by Plaintiff is a severe impairment, any error would be harmless because

the step was resolved in Plaintiff's favor. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Plaintiff makes no showing that either of the conditions mentioned creates limitations not already accounted for in the RFC and otherwise fails to develop the argument. *See Carmickle*, 533 F.3d at 1161 n.2 (9th Cir. 2008) (determining issue not argued with specificity may not be considered by the Court). Thus, the ALJ's step two finding is legally sufficient.

**B. Adverse Credibility Finding**

Plaintiff next faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting her symptom claims. ECF No. 14 at 12-13. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

As an initial matter, Plaintiff failed to address any of the specific reasons the

ALJ provided in support of the adverse credibility finding. ECF No. 14 at 13. The Court may decline to address an argument that is not raised with specificity. *Carmickle*, 533 F.3d at 1161 n.2. The Court finds, nonetheless, that the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely credible." Tr. 31.

### 1. Reasons for Stopping Work and Inconsistent Statements

The ALJ found that disparities about why and when Plaintiff stopped working raise a significant credibility concern. Tr. 31-32. When considering a claimant's contention that she cannot work because of her impairments, it is appropriate to consider whether the claimant has not worked for reasons unrelated to her alleged disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (the fact that the claimant left his job because he was laid off, rather than because he was injured, was a clear and convincing reason to find him not credible). In making a credibility evaluation, the ALJ may also rely on ordinary techniques of credibility evaluation. *Smolen*, 80 F.3d at 1284. One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. *Id.* In assessing credibility, it is appropriate for an ALJ to consider inconsistent statements made by a claimant. *See Thomas*, 278 F.3d at 958-59 (ALJ may consider inconsistent

1    statements).

2         First, the ALJ cited Plaintiff's testimony that her last job ended because she

3    needed to be available to her son 24 hours a day after he left a treatment facility,

4    rather than as a result of her impairments.  Tr. 31 (citing Tr. 71) (Plaintiff testified

5    her last job ended because her son was coming home after being in a treatment

6    center and she needed to be available 24 hours a day).  Further, the ALJ cited

7    evidence that Plaintiff's failure to return to work was related to reasons other than

8    her impairments.  Tr. 31 (citing Tr. 774) (in September 2011, Plaintiff told

9    examining psychologist Dr. Brown that she was not working because she was

10   taking care of her son, rather than as a result of her limitations).  The ALJ cited

11   substantial evidence to support her finding that the reasons given by Plaintiff for

12   not working are "inconsistent with the claim here, that her medical condition has

13   prevented her from working since the alleged onset date."  Tr. 31.

14        The ALJ found Plaintiff's credibility was similarly undermined because she

15   inconsistently reported when she stopped working.  Tr. 31.  For example, the ALJ

16   found Plaintiff testified that she had not worked since her alleged onset date of

17   August 1, 2009.  Tr. 31 (citing Tr. 71-72) (Plaintiff testified her last job was at

18   Spokane Youth Sports Bingo, and it ended in April 2009); *see also* Tr. 292

19   (Vocational and Work History Form noted Plaintiff's last employment as a bingo

20   caller ended in April 2009).  But, in March 2011, Plaintiff told Dr. Lynch she had

last worked July 3, 2010. Tr. 31 (citing Tr. 573). The ALJ further found that in January 2011, Plaintiff reported that she was working as a hairstylist. Tr. 31 (citing Tr. 605) (Plaintiff told treatment providers in the ER that she gave a hair permanent and this aggravated her shoulder pain). The ALJ permissibly relied on these inconsistencies to discredit Plaintiff's symptom claims. *Thomas*, 278 F.3d at 958-59.

### 2. Ability to Work with Impairments

Next, the ALJ cited evidence indicating that Plaintiff worked after the alleged onset date, although not at SGA levels. Tr. 31. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992). Specifically, the ALJ found that in September 2011, Plaintiff told examining psychologist Dr. Brown she provided some caregiving "for a woman for which she gets some pay"; Plaintiff additionally reported she sometimes provided haircuts in exchange for extra spending money, and was not working because she was taking care of her son. Tr. 31 (citing Tr. 773-74). The ALJ cited additional evidence that Plaintiff worked after onset in August 2009, further casting doubt on the extent to which Plaintiff's symptoms actually limited her. Tr. 31-32 (citing *e.g.,* Tr. 605) (on January 26, 2011, Plaintiff went to the ER for shoulder pain; she reported that she worked that day as a hairstylist); (citing Tr. 573) (On March 22, 2011, Plaintiff told treating physician

Patrick Lynch, Jr., M.D., that she had last worked on July 3, 2010). The ALJ found that the ability to work cast doubt on whether Plaintiff's employment ended due to medical conditions, and it cast doubt on the extent to which Plaintiff's symptoms actually limit her. Tr. 31-32. This was a clear and convincing reason for the ALJ to find Plaintiff not credible.

### 3. Daily Activities

The ALJ found activities performed by Plaintiff further belie her alleged symptom and limitation severity. Tr. 32. A claimant need not be utterly incapacitated in order to be eligible for benefits. *See Orn*, 495 F.3d at 639 ("[T]he mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). However, as in this case, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, the ALJ cited, for example, Plaintiff's reports that she worked after onset, indicating abilities greater than alleged. Tr. 32 (citing Tr. 554) (In January 2010, Plaintiff told treating physician Dr. Lynch she was "currently working as a hair stylist"); (citing Tr. 773-74) (In September 2011, Plaintiff told examining psychologist Dr. Brown that she performed some paid caregiving and sometimes also cut hair for extra money). This appears to contradict claims of a totally

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 25

debilitating impairment,[5] such as Plaintiff's testimony that she was unable to hold anything in her hands. Tr. 31 (citing Tr. 77) (Plaintiff testified that she drops everything she tries to pick up). As another example, the ALJ relied on Plaintiff's additional activities, including the ability to regularly drive and cook. Tr. 32 (citing Tr. 773-74) (In September 2011, Plaintiff told Dr. Brown she drove regularly; specifically, Plaintiff reported she took her son to and from school, and enjoyed driving around for entertainment); (citing Tr. 773) (Plaintiff also told Dr. Brown that, once a week, she prepared dinner for several different people); (citing Tr. 720) (Plaintiff told examining psychologist Dr. Arnold in May 2012 that she drove her daughter to work if Plaintiff needed to keep the car). As yet another example, the ALJ further found Plaintiff also told Dr. Arnold that, throughout the day, she went to play bingo, took the bus, checked in on her friend's mother, and performed other daily routine activities. Tr. 32 (citing Tr. 720). Further, as another example, the ALJ additionally found that in June 2014, Plaintiff told treatment providers at Frontier Behavioral Health that she had attended her high school reunion, attended a local basketball event, participated in a friend's

---

[5] Plaintiff testified she was unable to work entirely due to psychological problems, Tr. 74, however, she also testified that her hands are painful, numb, and she drops everything she tries to pick up. Tr. 77.

wedding, and helped several women style their hair.  Tr. 32 (citing Tr. 1161, 1164).  Moreover, the ALJ found that in August 2014, Plaintiff told providers at FBH that she cleaned a friend's house, gave rides to her friends, and attended support group meetings.  Tr. 32 (citing Tr. 1139).  The ALJ concluded such a range of activities strongly suggested that Plaintiff remained capable of greater physical functioning than alleged.  Tr. 32.  This was a clear and convincing reason to find Plaintiff not credible.

### 4. Lack of Objective Medical Evidence

The ALJ further found "the medical evidence of record does not support finding more limiting symptoms than determined here."  Tr. 32-35.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins,* 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair,* 885 F.2d at 601.  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also* S.S.R. 96-7p.[6]  Here, the ALJ

---

[6] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.  The new ruling also provides that the consistency of a claimant's statements with objective medical evidence and other evidence is a factor in evaluating a claimant's

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 27

set out, in detail, the medical evidence contradicting Plaintiff's claims of disabling shoulder impairment, low back pain, and hand and CTS-related symptoms. Tr. 32-34.

With respect to shoulder impairment, the ALJ noted Plaintiff experienced a work injury that occurred well before alleged onset in 2009.[7] Subsequently, Plaintiff underwent shoulder surgeries to repair the injury. Tr. 32 (citing Tr. 528) (In January 2005, treating physician Dr. Lynch noted Plaintiff "feels like she has made excellent recovery [post surgery] in her left shoulder," but her right shoulder was beginning to bother her"); *see also* Tr. 238 (Labor and Industries Closing Report dated October 20, 2011, lists three surgeries on each shoulder). The ALJ found, for example, that Plaintiff improved after left shoulder surgery in July 2010 and right shoulder surgery in November 2010. Tr. 32-33. The ALJ relied on several medical opinions when making this determination. First, the ALJ relied on treating physician Dr. Lynch's October 2011 RFC. Tr. 33 (citing Tr. 578); *see also* Tr. 267, 280, 284 (On October 4, 2011, Dr. Lynch released Plaintiff to return to

symptoms. S.S.R. 16-3p at *6. Nonetheless, S.S.R. 16-3p was not effective at the time of the ALJ's decision and therefore does not apply in this case.

[7] Plaintiff testified she filed a worker's compensation claim based on this injury in 1999, and last reopened it in 2006. Tr. 32 (citing Tr. 71).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 28

work).  Dr. Lynch opined Plaintiff should lift no more than 25 pounds and never lift above the shoulder.  Tr. 33 (citing Tr. 578).  The ALJ assessed a generally consistent RFC.  Tr. 30-31 (the ALJ included a more restrictive lifting limitation, of ten pounds occasionally, and adopted Dr. Lynch's restriction of no overhead reaching).  Next, the ALJ relied on a December 2011 IME which also indicated greater functioning than alleged by Plaintiff.  Tr. 33 (citing Tr. 596) (despite noted "tenderness over the AC joints, [Plaintiff] had good strength of grasp and good strength of wrist flexion/extension, radial/ulnar deviation, pronation, supination, biceps, triceps, and abduction/adduction, as well as flexion/extension of the shoulders. . . Moreover, there was full motion of the elbows, forearms, wrists, and hands.").  Third, the ALJ relied on a June 2012 finding by treatment provider Art Flores, PAC, that despite decreased range of motion in the shoulders bilaterally, Plaintiff demonstrated normal strength.  Tr. 33 (citing Tr. 736).  This finding is significant because July 2012 shoulder imaging showed moderate osteoarthritis of the left AC joint, and the right was similar but with more advanced osteoarthritic narrowing of the AC joint.  Tr. 33 (citing Tr. 738).  On exam, however, the ALJ noted that Plaintiff demonstrated normal strength, Tr. 736, meaning any limitation was not severe.  Tr. 33.

Regarding objective evidence of back-related symptoms, the ALJ noted Plaintiff has a history of chronic low back pain, but the clinical evidence does not

support greater limits than for sedentary to light work.  Tr. 33 (citing Tr. 734) (in June 2012, treatment provider Mr. Flores noted Plaintiff gave a history of chronic low back pain).  The ALJ relied on objective evidence, for example, lumbar spine views in July 2012 that showed minimal endplate spurring at L2/3 and L3/4 with preservation of disc heights with mild to moderate multilevel lumbar facet arthropathy; significantly, overall degenerative changes were only slightly progressed when compared with prior 2007 imaging.  Tr. 33 (citing Tr. 738).  Next, the ALJ found, as another example, the record noted the lack of any gait abnormalities.  Tr. 33 (citing Tr. 595) (an IME in December 2011 noted normal gait); (citing Tr. 736) (in June 2012, treatment provider Mr. Flores noted "gait intact"); (citing Tr. 764) (In September 2012, Mr. Flores again noted Plaintiff's gait was normal).  The ALJ further found, as another example, that December 2011 IME findings showed Plaintiff was able to stand on heels and toes without difficulty, and there was no motor weakness of the lower extremities.  Tr. 33 (citing Tr. 596).  The ALJ went on to find, as another example, that treatment provider Mr. Flores' exam findings were largely benign.  Tr. 33 (citing Tr. 735) (in June 2012, Mr. Flores noted Plaintiff complained of pain, but lumbar range of motion was full, and straight leg raising was negative in the supine position).  Moreover, the ALJ further found that during the period at issue, Plaintiff's obesity was of only mild severity with a BMI that reached 33, meaning obesity would not

have greatly aggravated Plaintiff's low back symptoms.  Tr. 33 (citing Tr. 1118)

(in April 2014 Mr. Flores recorded a BMI of 33.94); *see also* Tr. 735 (in June

2012, Mr. Flores noted Plaintiff's BMI was 31.05); Tr. 466 (in July 2011, treating

physician Dr. Purdy noted Plaintiff's BMI was 30.42).

With respect to carpal tunnel-related symptoms, the ALJ found the medical

evidence again did not support the alleged severity of Plaintiff's complaints.  Tr.

33.  For example, the ALJ pointed out that Plaintiff testified that she dropped

everything she picked up.  Tr. 33 (citing Tr. 77).  However, the ALJ found this was

unsupported by an October 2013 nerve conduction study that showed only mild

bilateral CTS.  Tr. 33 (citing Tr. 1125).  The ALJ's finding that Plaintiff's claims

of disabling physical limitations are not supported by the objective medical

evidence, including the opinions of treating sources and IME physicians who

examined Plaintiff in December 2011, is supported by substantial evidence.

This reason, coupled with the other reasons cited by the ALJ, provided clear

and convincing reasons to discredit Plaintiff's symptom claims.

**C.  RFC Finding**

Plaintiff contends that the RFC is inadequate because it does not properly

account for the limitations assessed by testifying medical experts Dr. Jahnke and

Dr. Martin, and examining psychologist Dr. Arnold.  ECF No. 14 at 13-14.  In

support of her claim, Plaintiff contends the ALJ "ignored" her physical and mental

limitations that affect her ability to work, the effects of her pain from her physical impairments, and "more importantly the limitations posed by upper extremities as testified by Dr. Jahnke and her mental limitations." ECF No. 14 at 13. In contrast, the ALJ considered the assessed limitations and rejected them, which findings Plaintiff failed to challenge. Plaintiff's failure to challenge the findings waived the issue. *Campbell v. Burt,* 141 F.3d 927, 931 (9th Cir. 1998) (holding that issues not raised before the district court are waived on appeal). Because an ALJ is not required to incorporate properly rejected limitations in an RFC, *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004), the Court finds the record demonstrates that the ALJ's RFC findings were adequately supported.

### 1. Lynne Jahnke, M.D.

Plaintiff contends the ALJ should have included upper extremity limitations assessed by Dr. Jahnke, a testifying medical expert. ECF No. 14 at 13. As an initial matter, Plaintiff has failed to articulate the specific limitations to which she refers. Moreover, in contrast to Plaintiff's assertion that the ALJ "ignored" Dr. Jahnke's assessed limitations, ECF No. 14 at 13, the ALJ identified and discussed them. Tr. 34. The ALJ then adopted some, but not all, of Dr. Jahnke's assessed limitations in the RFC. Tr. 34. Specifically, the ALJ rejected Dr. Jahnke's postural and manipulative limits based on the lack of medical evidence supporting strength deficits in the lower or upper extremities, the assessed limitations being

inconsistent with the medical records.  Tr. 34.  Plaintiff failed to challenge the

ALJ's cited reasons for rejecting the medical testimony and any challenge is

waived.  *Campbell,* 141 F.3d at 931.  Because the ALJ's unchallenged reason to

reject Dr. Jahnke's limitations was proper, the ALJ was not required to include the

limitations in the RCF.  *See Batson,* 359 F.3d at 1197 (ALJ not required to

incorporate opinion evidence permissibly discounted in the RFC).  Having

permissibly discounted Dr. Jahnke's assessed limitations, the ALJ was not required

to include them in the RFC.

### 2.  *Marian Martin, Ph.D.*

Plaintiff contends the ALJ should have included limitations assessed by Dr.

Martin, a testifying psychologist.  ECF No. 14 at 13, 15 (citing Tr. 64).  Plaintiff's

failure to address the ALJ's analysis of the medical evidence waives the issue.

*Campbell,* 141 F.3d at 931.  Based on the Court's independent review, the Court

finds the record demonstrates that the ALJ's failure to include the assessed

limitation was adequately supported.  Dr. Martin opined that Plaintiff has a mild to

moderate impairment in concentration, persistence, and pace.  Tr. 64.  The ALJ

omitted this limitation in the assessed RFC, Tr. 30-31 (no mental limitations

assessed), because the ALJ need only include in the hypothetical those limitations

that significantly limit a claimant's ability to perform work.  *See Koehler v. Astrue*,

283 F.App'x 443, 445 (9th Cir. 2008) (unpublished) (ALJ's finding that claimant

lacked a severe mental impairment was proper even though claimant had a "moderate" limitation in the "ability to respond to changes in the workplace setting"); *see also Linthicum v. Colvin*, 2016 WL 5799696, at *3 (W.D. Wash. Oct. 5, 2016) ("[T]he Social Security Administration defines 'moderate' as 'more than a slight limitation in this area but the individual is still able to function satisfactorily.' ") (citing *Scherer-Huston v. Comm'r of Soc. Sec.*, No. 01:1:14-cv-00688-HZ, 2015 WL 1757145, at *8 (D. Or. Apr. 16, 2015)). As noted, the ALJ reasonably found Plaintiff's mental conditions are not severe impairments because they cause no more than minimal limitations in Plaintiff's ability to perform work activity. Tr. 28-30. Moreover, given the fact that Plaintiff is able to maintain concentration, persistence and pace at a satisfactory level, omitting that moderate limitation from the RFC was inconsequential to the ALJ's ultimate nondisability determination. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (quotation and citation omitted). Accordingly, the Court finds that if the ALJ did err by failing to include the mild to moderate limitation, the error was harmless.

    *3. John Arnold, Ph.D.*

    Plaintiff contends the ALJ should have included limitations assessed by examining psychologist Dr. Arnold. ECF No. 14 at 13-15 (citing Tr. 719-33). Because Plaintiff failed to address the ALJ's analysis of the medical evidence, the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 34

issue is waived. *Campbell,* 141 F.3d at 931. Based on the Court's independent

review, the Court finds the record demonstrates that the ALJ's failure to include

Dr. Arnold's assessed limitations was adequately supported. Dr. Arnold evaluated

Plaintiff in May 2012 and opined Plaintiff needed intensive mental health

treatment, prognosis was guarded, and symptoms would negatively impact overall

job performance. Tr. 720. The ALJ gave Dr. Arnold's opinion little weight. Tr.

30. Specifically, the ALJ rejected Dr. Arnold's assessment based on its

inconsistency with Plaintiff's normal mental status exams, inconsistency with

Plaintiff's reported activities, reliance on Plaintiff's unreliable subjective

complaints, and testing that revealed Plaintiff may have over-reported

psychological and somatic dysfunction. Tr. 30. The cited reasons were adequately

supported and the ALJ properly rejected Dr. Arnold's assessed limitations. An

ALJ is not required to incorporate properly rejected limitations in an RFC. *Batson*,

359 F.3d at 1197. Accordingly, because the ALJ permissibly discounted Dr.

Arnold's assessed limitations, the Court finds the ALJ was not required to include

those limitations in the RFC.

**D. Hypothetical Posed to Vocational Expert**

Plaintiff contends the ALJ's hypothetical was incomplete because it failed to

include all of Plaintiff's limitations. ECF No. 14 at 14-15. The ALJ's hypothetical

must be based on medical assumptions supported by substantial evidence in the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 35

record that reflects all of the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. In effect, Plaintiff restates her arguments that the ALJ erroneously excluded evidence of Plaintiff's limitations. Because the ALJ's assessment of Plaintiff's testimony and the medical evidence was supported by substantial evidence, her step five findings are free of error. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (challenge to ALJ's step five findings was unavailing where it "simply restates [claimant's] argument that the ALJ's RFC finding did not account for all her limitations"). For reasons discussed throughout this decision, the ALJ's hypothetical to the vocational expert was based on the evidence and reasonably reflects Plaintiff's limitations. Thus, the ALJ's findings are supported by substantial evidence and are legally sufficient.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful error.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 15, is

   **GRANTED**.

1    The District Court Executive is directed to file this Order, enter

2    **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE**

3    the file.

4        DATED June 8, 2017.

5                                    s/Mary K. Dimke
                                     MARY K. DIMKE
6                                     UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 37